

**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

MID-AMERICA CONVERSION SERVICES, LLC
C. Ernest Edgar IV Senior Vice President and General Counsel
Atkins North America, Inc.
4030 West Boy Scout Boulevard, Suite 700
Tampa FL 33607

07/28/2022

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).  **ALL information should be verified by you.**

Item: 2022-36

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| # | Field | Value |
|---|---|---|
| 1. | **Entity Served:** | MID-AMERICA CONVERSION SERVICES, LLC |
| 2. | **Title of Action:** | Deanna Dobson vs. Mid-America Conversion Services, LLC |
| 3. | **Document(s) Served:** | Civil Summons<br>Complaint and Demand for Jury Trial<br>Civil Case Cover Sheet |
| 4. | **Court/Agency:** | Fayette County Circuit Court |
| 5. | **State Served:** | Kentucky |
| 6. | **Case Number:** | 22-CI-02088 |
| 7. | **Case Type:** | Disability Discrimination |
| 8. | **Method of Service:** | Certified Mail |
| 9. | **Date Received:** | Wednesday 07/27/2022 |
| 10. | **Date to Client:** | Thursday 07/28/2022 |
| 11. | **# Days When Answer Due: Answer Due Date:** | 20<br>Tuesday 08/16/2022   <u>CAUTION:</u> Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:** (Name, City, State, and Phone Number) | Christopher D. Miller<br>Lexington, KY<br>859-381-9999 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 181 |
| 16. | **Notes:** | None |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information.  At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

| | | |
|---|---|---|
| AOC-E-105  Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **22-CI-02088**  **EXHIBIT 1**<br>Court: **CIRCUIT**<br>County: **FAYETTE** |

*Plantiff,* **DOBSON, DEANNA VS. MID-AMERICA CONVERSION SERVICES, LLC**, *Defendant*

TO:  **CORPORATE CREATIONS NETWORK, INC.**
     **101 NORTH SEVENTH STREET**
     **LOUISVILLE, KY 40202**

Memo: Related party is MID-AMERICA CONVERSION SERVICES, LLC

The Commonwealth of Kentucky to Defendant:
**MID-AMERICA CONVERSION SERVICES, LLC**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*/s/ Vincent Riggs*
Fayette Circuit Clerk
Date: **7/21/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____         _____
                                                Served By

                                          _____
                                                Title

Summons ID: 484354032946439@00001101144
CIRCUIT: 22-CI-02088 Certified Mail
DOBSON, DEANNA VS. MID-AMERICA CONVERSION SERVICES, LLC



Page 1 of 1

 

This page was intentionally left blank

**COMMONWEALTH OF KENTUCKY**
**FAYETTE CIRCUIT COURT**
**DIVISION ___**

**CIVIL ACTION NO. _____**

**DEANNA DOBSON**                                                                                         **PLAINTIFF**

v.

**MID-AMERICA CONVERSION**
**SERVICES, LLC**                                                                                              **DEFENDANT**

      **Serve: Corporate Creations Network, Inc.**
            **101 North Seventh Street**
            **Louisville, Kentucky 40202**

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

---

Comes the Plaintiff, Deanna Dobson (hereinafter "Dobson"), by and through the undersigned counsel, and for her Complaint and Demand for Jury Trial, hereby states as follows:

1. Dobson is a resident of the Commonwealth of Kentucky, and currently resides in Versailles, Kentucky.

2. The Defendant, Mid-America Conversion Services, LLC ("MCS") is a foreign limited liability company with its principal place of business listed with the Kentucky Secretary of State as 100 Center Point Circle, Suite 100, Columbia, South Carolina 29209. For the relevant time period, MCS was Dobson's employer as that term is defined in Title VII of the Civil Rights Act of 1964 (42 USC 2000(e), *as* amended)(Title VII), the Disability Act of 1990 (42 USC 12101, *as* amended)("ADA"), KRS Chapter 344, *et* seq., and all other relevant law. MCS may be served through its agent for service of process, listed above.

1



3. This Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, the amount in controversy is sufficient to meet this Court's minimal jurisdictional requirements, and venue is appropriate in Fayette Circuit Court.

## **GENERAL FACTUAL ALLEGATIONS**

4. Dobson repeats and incorporates the allegations contained in numerical paragraphs 1-3 of the Verified Complaint and Demand for Jury Trial as if fully restated herein.

5. MCS is the current holder of a federal government contract ("the Federal contract") in the Central Kentucky region. It is not uncommon for different companies to bid on and/or obtain this contract.

6. Dobson was originally hired by the former holder of the Federal contract in 2011.

7. MCS obtained the Federal contract in 2017 and hired Dobson to continue to work on the Federal contract in MCS' IT Department.

8. Dobson was an exemplary employee for MCS, having been promoted and having received at least "meets requirements" on all scores on all of her employee evaluations with MCS, including her most recent evaluation.

9. In March 2020, and because of the COVID outbreak, Dobson and all other similarly-situated Lexington, Kentucky office employees for MCS were sent home to work remotely.

10. Dobson was fully able to perform all of her job functions (essential or otherwise) for MCS on as remote basis, and MCS did not, and cannot, demonstrate that this remote working environment was somehow an undue burden on its business.

11. In fact, even after Dobson's illegal termination discussed, *infra*, all of MCS' Lexington, Kentucky office workers similarly-situated to Dobson are still working on a remote

2

basis. Further, MCS allowed another similarly-situated employee to Dobson who performed substantially the same work, to perform his work remotely, even before the vaccination policy listed below, and this employee continued to work remotely until his retirement performing substantially the same functions as Dobson, and serving the same 3 MCS locations as Dobson. Dobson herself was responsible for supporting 3 of MCS' locations, and did so remotely for 2 such sites even before the COVID outbreak, and successfully provided support to the other office site remotely after March 2020.

12. In or around September 2021, President Biden instituted a policy requiring all Federal contract employees to be vaccinated or provide their Federal contract employer with a valid exemption request.

13. Shortly thereafter, MCS instituted a COVID vaccination policy (MCS Covid-19 Vaccination Policy, DUF6-POL-084) requiring all of their employees, including Dobson, to become vaccinated or provide a valid request for exemption.

14. Dobson thereafter strictly followed MCS' policies and submitted both religious and disability-based exemption requests to MCS. Dobson proposed the accommodation of continuing to work remotely, as she had been doing successfully for years, and even offered to pay for her own weekly COVID tests should she even be required to actually come to the Lexington, Kentucky office site.

15. Dobson's medical based exemption request was signed by her treating health provider (per MCS' policy) and this treating medical provider indicated that she required a medical exemption from the vaccine because of her permanent autoimmune disease, which is a contraindication for the COVID vaccine.

16. Dobson also submitted a religious based exemption from the COVID vaccine based upon her sincerely held religious beliefs, which was signed by both the Pastor and a Deacon from St. Luke's Catholic Church in Nicholasville, Kentucky.

17. Both of Dobson's exemption requests were timely made upon MCS and were in complete conformity with MCS' policy.

18. On October 21, 2021, Dobson received a "form" letter which did not state that either of Dobson's exemption requests were invalid or not pursuant to policy, but rather, stated that "a reasonable accommodation is not available for your position that would enable you to continue working at MCS without a vaccination" and that she must be fully vaccinated by December 1, 2021.

19. Despite the fact that MCS acknowledged in this letter that it had a legal duty (and a duty under its own policy) to engage in the inter-active process with Dobson to determine whether a reasonable accommodation could be made, and despite the fact that this letter stated that Dobson's exemption request underwent "careful consideration and evaluation," in fact MCS did not engage in the inter-active process with Dobson regarding her request. Further, MCS did not carefully review her request, but rather sent her a form letter which was part of its illegal policy and practice (discussed, *supra*) to not consider, much less grant, any employees' medical or religious-based exemptions.

20. Pursuant to MCS' policy, Dobson appealed this decision and MCS denied this appeal on November 11, 2021, falsely again stating that no reasonable accommodation could be found for her position (again, without engaging in the inter-active process with her) and falsely stating that "MCS will return to complete and normal levels of operation after December 1, 2021." Again,

4

as of mid-July 2022, most of MCS' Lexington, Kentucky office workers, including the Application Development group of which Dobson was a part of, are still working remotely, with no firm date in place to return to the office.

21. MCS terminated Dobson's employment on or about December 1, 2021, under the false rationale that it could not reasonably accommodate her exemption requests.

22. After Dobson was fired, MCS advertised her position and it was clearly stated that this job was to be performed remotely. As such, MCS retaliated against Dobson for simply making her exemption request and asking to continue to work remotely—as her position is advertised to be performed remotely.

23. MCS never had any intention of granting any employees' exemption request, whether it was valid or otherwise, and it never had any intention of engaging in the legally required interactive process with its employees, including Dobson, that made exemption requests.

24. For the relevant time period, MCS' ESH-QA Director was Scott Nicholson. Mr. Nicholson chaired the Covid Steering Committee ("CSC") meetings. The U.S. Department of Energy requested that MCS hold these CSC meetings with all of the companies under contract on the reservation, with the goal of formulating a uniform COVID policy which all of the various companies on site would follow.

25. Management from each company would attend these CSC meetings to discuss their current COVID policies and work together to formulate a cohesive plan that would work for everyone. Surrounding the news that the Biden Administration would require all federal government workers and contractors be vaccinated against COVID-19, these CSC meetings also

5

discussed how medical and religious exemption requests regarding the vaccine would be handled.

26. During a CSC meeting, Scott Nicholson said words to the effect of, "We [MCS] don't need to worry about this stuff, because MCS would not have any exemptions," and that, "MCS was to be 100% vaccinated." Clearly, MCS had foregone its legal duties and decided to deny each and every medical and religious based exemption without even considering same.

27. Upon information and belief, and pursuant to Mr. Nicholson's statements regarding MCS' illegal policy, MCS did not, in fact, grant any religious exemptions, and further, only allowed for temporary medical exemptions in cases where an employee had contracted COVID within the last ninety (90) days. There was no consideration given to those exemption requests and MCS did not engage in an inter-active process of any kind to attempt to accommodate those requests, but rather issued a standard-form letter denying same.

28. Upon information and belief, and after Dobson's and others' illegal terminations, MCS engaged in an effort to "CYA" by assembling some sort of "proof" that Dobson's and others' valid exemption requests were actually considered, when in fact they were not.

29. Dobson has received her Right to Sue letter from the EEOC, dated June 8, 2022, and this Complaint is timely filed.

## COUNT I

### DISABILITY DISCRIMINATION AND FAILURE TO ACCOMODATE

30. Dobson repeats and incorporates the allegations contained in numerical paragraphs 1-29 of the Complaint and Demand for Jury Trial as if fully restated herein.

31. The above cited acts and omissions of MCS constitutes disability discrimination made

illegal by the ADA and KRS Chapter 344, *et seq.*

32. At all times relevant herein, Dobson was a qualified person with a disability in that she was able to perform the essential functions of her job with reasonable accommodations.

33. Adverse employment action has been taken against Dobson because of her disability.

34. The purported rationale for taking the adverse employment actions against Dobson is pre-textual, and the true reason is disability discrimination.

35. Dobson is disabled as that term is defined in KRS Chapter 344, *et seq.*

36. Dobson is otherwise qualified for her job with MCS, with or without reasonable accommodations.

37. MCS was fully aware of the existence of and nature of Dobson's disability.

38. Dobson made a request for an objectively reasonable accommodation to MCS.

39. MCS failed to institute this reasonable accommodation of remote work, despite the fact that Dobson's job was being performed remotely at the time of her termination and that her position was advertised as a remote position by MCS after she was illegally terminated.

40. MCS has not, and cannot, prove that the requested accommodation would pose an undue hardship on MCS if implemented.

41. MCS failed to engage in the legally required interactive process with Dobson and/or otherwise engaged in same in bad faith, in an attempt to further discriminate and retaliate against Dobson because of her disability.

42. MCS engaged in a pattern and practice of disability discrimination, in that it instituted a policy/practice wherein no requests for disability exemptions from its mandatory vaccine policy would be considered, much less granted.

7



43. As a direct and proximate result of MCS's impermissible and discriminatory conduct and omissions, Plaintiff is entitled to recover her actual damages sustained as a result, including compensatory damages for past, present and future lost wages, benefits, and other privileges of her employment with MCS, and damages for humiliation, embarrassment.

44. Dobson is further entitled to an award of punitive damages from MCS for its intentional violations of the ADA.

## COUNT II

### RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE SINCERELY HELD RELIGIOUS BELIEF

45. Dobson repeats and incorporates the allegations contained in numerical paragraphs 1-44 of the Complaint and Demand for Jury Trial as if fully restated herein.

46. Dobson held a sincere religious belief that conflicted with MCS' mandatory vaccine policy.

47. The sincere religious belief is valid, and MCS has not, and cannot, challenge its validity.

48. Dobson requested an accommodation to continue working remotely due to her sincerely held religious belief.

49. Dobson's accommodation request did not, and does not, constitute an undue burden on MCS' business or otherwise constitute an undue hardship on MCS' business. Dobson, and all other office works for MCS at its Lexington, Kentucky office, were working remotely at the time the mandatory vaccine policy was instituted; they continued to work remotely after the policy's institution and still work remotely to this day; other similarly-situated employees have been granted the accommodation to work remotely; and Dobson's position was advertised as a remote

8

position after her illegal termination.

50. Adverse employment action was taken against Dobson because of her request for a valid and reasonable accommodation.

51. MCS failed to engage in the legally required interactive process with Dobson and/or otherwise engaged in same in bad faith, in an attempt to further discriminate and retaliate against Dobson because of her religion.

52. MCS engaged in a pattern and practice of religious discrimination, in that it instituted a policy/practice wherein no requests for religious exemptions from its mandatory vaccine policy would be considered, much less granted.

53. As a direct and proximate result of MCS's impermissible and discriminatory conduct and omissions, Plaintiff is entitled to recover her actual damages sustained as a result, including compensatory damages for past, present and future lost wages, benefits, and other privileges of her employment with MCS, and damages for humiliation, embarrassment.

54. Dobson is further entitled to an award of punitive damages from MCS for its intentional violations of Title VII.

## COUNT III

## RETALIATION

55. Dobson repeats and incorporates the allegations contained in numerical paragraphs 1-54 of the Verified Complaint and Demand for Jury Trial as if fully restated herein.

56. Dobson, when reporting her disability and sincerely held religious beliefs in requesting an exemption from MCS' mandatory vaccine policy and, and in making her request for a reasonable accommodation, was engaged in protected activities.

9

57. MCS was well aware of the fact that Dobson has engaged in these protected acts.

58. Dobson has been disadvantaged by the adverse employment actions taken against her by MCS.

59. There is a causal relationship between Dobson engaging in these protected acts and MCS' adverse employment actions taken towards her.

60. The purported rationale for taking the adverse employment actions against Dobson is pre-textual, and the true reason is illegal retaliation.

61. As a direct and proximate result of MCS' impermissible and retaliatory conduct and omissions, Dobson is entitled to recover her actual damages sustained as a result, including compensatory damages for past, present and future lost wages, benefits, and other privileges of her employment with MCS, and damages for humiliation, embarrassment, personal indignity, and emotional distress, in an amount in excess of the jurisdictional limits of this Court, and is further entitled to recover her Court costs and reasonable attorneys' fees incurred, under the ADA, Title VII, and KRS Chapter 344, *et seq.* from MCS.

62. Dobson is further entitled to an award of punitive damages from MCS for its intentional violations of the ADA, Title VII, and KRS Chapter 344, *et seq.*

**WHEREFORE**, Dobson requests the following relief from this Court:

1. For trial by jury;

2. On Count I, for compensatory and punitive damages from MCS, along with her attorney fees and court costs;

3. On Count II, for compensatory damages, punitive damages, court costs, and attorney's fees from MCS;

4. On Count III, for compensatory damages, punitive damages, court costs, and attorney's fees from MCS;

5. For her court costs and attorneys' fees;

6. Pre and post-judgment interest on all such damages at the highest allowable rate; and

7. For any and all other relief, equitable or otherwise, to which she may appear entitled.

Respectfully submitted,

ARNOLD & MILLER, P.L.C.

/s/ Christopher D. Miller
Christopher D. Miller
121 Prosperous Pace, Suite 6B
Lexington, Kentucky 40509
Telephone: (859) 381-9999
Facsimile: (859) 389-6666
E-mail: cmiller@arnoldmillerlaw.com

11



Case: 5:22-cv-00210-KKC-MAS     Doc #: 1-1     Filed: 08/15/22     Page: 15 of 17 - Page ID#: 19     **EXHIBIT 1**

Case: 5:22-cv-00210-KKC-MAS     Doc #: 1-1     Filed: 08/15/22     Page: 15 of 17 - Page ID#: 19     **EXHIBIT 1**

Filed          22-CI-02088          07/21/2022          Vincent Riggs, Fayette Circuit Clerk

| AOC-104    Doc. Code: CCCS |  | Case No.: _____ |
|---|---|---|
| Rev. 9-21 |  | Court: Circuit |
| Page 1 of 1 |  |  |
| Commonwealth of Kentucky |  | County: Fayette |
| Court of Justice    www.kycourts.gov | CIVIL CASE COVER SHEET | Division: _____ |



**PLAINTIFF/PETITIONER** *OR* **IN RE/IN THE INTEREST OF:**
DEANNA DOBSON

**DEFENDANT/RESPONDENT,** *if applicable:*
MID-AMERICA CONVERSION SERVICES, LLC

☐ Check here if **YOU DO NOT HAVE AN ATTORNEY** and are **REPRESENTING YOURSELF**
    (a Self-Represented *[Pro Se]* Litigant)

**Nature of the Case:** Place a "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE**. If you are making more than one type of claim, check the one that you consider most important.

**DOMESTIC RELATIONS**
☐ Dissolution/Divorce with Children (DISSOC)
☐ Dissolution/Divorce without Children (DISSO)
☐ Paternity (PA)
☐ Custody (CUSTO)
☐ Child Support IV-D (SUPIV)
☐ Child Support Private Non IV-D (SUPPRI)
☐ URESA/UIFSA (UR)
☐ Visitation/Parenting Time (VISIT)
☐ Voluntary Termination of Parental Rights (VTPR)
☐ Involuntary Termination of Parental Rights (ITPR)
☐ Adoption (ADPT)
☐ Other: (DFOTH) _____

**PROBATE / ESTATE**
☐ Guardianship-Adult (GCADLT)
☐ Guardianship-Juvenile (GCJUV)
☐ Adult Conservatorship - Trusteeship (CONSVA)
☐ Juvenile Conservatorship - Trusteeship (CONSVJ)
☐ Probate-Testate (with a will) (PBTEST)
☐ Probate-Intestate (without a will) (PBINT)
☐ Petition to Dispense with Administration (PBDIS)
☐ Name Change (NC)
☐ Will Contest (WC)
☐ Other: (PBOTH) _____

**TORT (Injury)**
☐ Automobile (AUTO)
☐ Intentional (INTENT)
☐ Malpractice-Medical (MDML)
☐ Malpractice-Other (MLOTH)

☐ Premises Liability (PREM)
☐ Product Liability (PROD)
☐ Property Damage (PD)
☐ Slander/Libel/Defamation (SLAND)
☐ Other: (PIOTH) _____

**REAL PROPERTY**
☐ Abandoned and Blighted Property Conservatorship (PC)
☐ Property Rights (PR)
☐ Condemnation (DOMAIN)
☐ Forcible Detainer - Eviction (FD)
☐ Forcible Entry (FENTRY)
☐ Foreclosure (FCL)
☐ Other: (COOTH) _____

**EMPLOYMENT**
☒ Employment-Discrimination (DSCR)
☐ Employment-Other (DISPU)

**CONSUMER**
☐ Seller Consumer Goods (DEBTG)
☐ Seller Consumer Services (DEBTS)
☐ Buyer Consumer Goods (BUYERG)
☐ Buyer Consumer Services (BUYERS)
☐ Credit Card Debt (CREDIT)
☐ Fraud (FRAUD)
☐ Other: (COOTH) _____

**APPEALS**
☐ Appeal from Administrative Agency (AB)
☐ Appeal from District Court (XI)
☐ Other: (OTH) _____

**MISC CIVIL**
☐ Constitutional Challenge (CCHAL)
☐ Habeas Corpus (HABEAS)
☐ Non-Domestic Relations Restraining Order (IP)
☐ Tax (TAX)
☐ Writs (WRITS)
☐ Other: (OTH) _____

**BUSINESS / COMMERCIAL**
☐ Business Tort (BCPI)
☐ Statutory Action (BCSA)
☐ Business Contract Dispute (BCCO)
☐ Other: (BCOTH) _____



This page was intentionally left blank

JUL 27 2022